# IN THE COURT OF APPEALS OF IOWA

No. 14-0708
Filed July 16, 2014

**IN THE INTEREST OF H.L.,**
    **Minor Child,**

**A.L., Father,**
    Appellant.
_____

    Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

    A father appeals the order terminating his parental rights. **AFFIRMED.**

    Jane M. White of Jane White Law Office, Des Moines, for appellant.

    Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorney General, John P. Sarcone, County Attorney, and Christina Gonzalez, Assistant County Attorney, for appellee.

    Aaron H. Ginkens of Ginkens Law Firm, P.L.C., West Des Moines, for mother.

    Karl Wolle of Juvenile Public Defender's Office, Des Moines, attorney and guardian ad litem for minor child.

    Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**MCDONALD, J.**

Alan appeals an order terminating the parental rights between him and his daughter, H.L. The juvenile court terminated Alan's parental rights pursuant to Iowa Code section 232.116(1)(d) and (*l*) (2013) (providing for the termination of parental rights in the case of physical abuse and neglect and in the case of severe, chronic substance abuse that presents a danger to others). On appeal, Alan contends the juvenile court should not have proceeded with termination of his parental rights because the child is placed with a relative. *See* Iowa Code § 232.116(3)(a). He also argues he should have been granted an additional six months to access services and work toward reunification. *See* Iowa Code § 232.104(2)(b).

I.

H.L. was born in January 2013 to Kami, the mother, and Alan. The child came to the attention of the Iowa Department of Human Services (hereinafter "IDHS") and the juvenile court at the time of birth because Kami was involved in a pending child in need of assistance proceeding involving her older child. The older child is not the biological child of Alan, and the older child's status is not at issue in this proceeding. The State filed a child in need of assistance proceeding regarding H.L. in January 2013. The State alleged the mother had a history of methamphetamine use and abuse and a history of mental health conditions resulting in hospitalizations. The petition alleged Alan had ongoing substance abuse problems and a significant history of criminal behavior, including domestic violence, both of which created a risk to the child. Although the State filed a child

in need of assistance proceeding regarding H.L., the child was not removed from Kami because of Kami's success in her substance abuse and mental health treatment in the case involving her older child. Nonetheless, the juvenile court adjudicated H.L. in need of assistance on March 11, 2013.

At the time of the adjudication hearing and order, Kami was in residential substance abuse treatment. From that time throughout the remainder of this proceeding, Kami continued to progress in her treatment and continued to participate successfully in recommended services. Other than a brief period following Kami's successful discharge from the residential treatment facility while transitioning housing, H.L. remained in the custody and care of Kami. At the time of the adjudication hearing and order, Alan was living at a halfway house following his release from prison. Like Kami, Alan participated in services, including outpatient substance abuse treatment, prior to the adjudication hearing and for some period of time thereafter. Alan provided clean drug screens. He exercised supervised visitation with H.L. Alan's visitations went well. By all accounts he was appropriate, loving, nurturing, and caring. At the termination hearing, Kami and Kami's mother testified that Alan, when sober, is a good father. Because Kami and Alan were progressing with services, the permanency plan called for reunification of the family.

Prior to reunification occurring, things began to unravel for Alan. In approximately September 2013, Kami reported to IDHS that Alan had relapsed. She also reported that she could no longer pursue a relationship with Alan. In October 2013, Alan entered Kami's home and assaulted her. The incident report

shows that Alan pushed his way into Kami's home, pulled her to the ground by her hair, and then struck her in the head several times. Kami believed that Alan was under the influence of methamphetamine at the time. He was charged with domestic abuse assault enhanced. The IDHS case worker testified that Alan simply stopped using services in approximately August 2013. She also testified that Alan had only one visitation with H.L. between September 2013 and the time of the termination hearing.

The State filed its petition to terminate Alan's parental rights in January 2014. The matter came on for trial on February 17, 2014. At the time of the termination hearing, Alan was in the custody of the Polk County Sheriff on the pending assault charge. He waived his presence at the termination trial. The court ordered the termination of Alan's parental rights pursuant to the above-cited code provisions. The mother supported the termination of Alan's parental rights as did H.L.'s guardian ad litem. Alan timely filed this appeal.

II.

We review de novo proceedings terminating parental rights. *See In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We give weight to the findings of the juvenile court, especially concerning the credibility of witnesses, but we are not bound by them. *See id.* at 480–81. While giving weight to the findings of the juvenile court, our obligation to review termination proceedings de novo means our review is not a rubber stamp of what has come before. We will

thus uphold an order terminating parental rights only if there is clear and convincing evidence of grounds for termination. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.*

Termination of parental rights under chapter 232 follows a three-step analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the court must determine if a ground for termination under section 232.116(1) has been established. *See id.* Second, if a ground for termination is established, the court must apply the framework set out in section 232.116(2) to decide if proceeding with termination is in the best interests of the child. *See id.* Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory exceptions set forth in section 232.116(3) should serve to preclude the termination of parental rights. *See id.*

### III.

Alan contends the juvenile court should have denied the State's petition for termination of his parental rights or afforded him an additional six months' services to work toward reunification of the child. Alan first relies upon Iowa Code section 232.116(3)(a), which provides the court need not terminate the parent-child relationship if a "relative has legal custody of the child." Alan also relies upon Iowa Code section 232.104(2)(b), which allows the juvenile court to

> [e]nter an order pursuant to section 232.102 to continue placement of the child for an additional six months at which time the court shall hold a hearing to consider modification of its permanency order. An order entered under this paragraph shall enumerate the specific

factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period.

It should first be noted that the statutory provisions upon which Alan relies do not grant him an automatic entitlement to relief. The exception set forth in section 232.116(3)(a) is permissive and not mandatory. *See In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997) ("An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child."); *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011) (stating this provision is permissive and not mandatory). Thus, even where custody of the child is with a relative, the juvenile court may proceed with termination of the parent-child relationship where there is clear and convincing evidence establishing a ground for termination and termination is in the best interest of the child. *See C.K.*, 558 N.W.2d at 174 ("The child's best interests always remain the first consideration."). The decision not to terminate must be made based on the facts and circumstances of each case. Likewise, being afforded additional time is not a matter of right. The plain language of section 232.104(2)(b) provides that additional time shall not be granted unless the juvenile court specifically finds the basis for the need for removal of the child will no longer exist at the end of the six-month period. *See* Iowa Code § 232.104(2)(b); *In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005).

On our de novo review, we agree with the juvenile court that further delay will not resolve the harms warranting removal with respect to Alan and that termination of the parent-child relationship between Alan and H.L. was in the best

interest of the child. Alan has a long history of substance use and abuse, and we see no reasonable likelihood of successful treatment and continued sobriety by the end of the six-month period. He first consumed alcohol and marijuana at age eleven. He started using methamphetamine and acid at age twelve. He started using cocaine at age thirteen. He is now forty-four. While it is true that Alan experienced success with services at the beginning of this case, he relapsed shortly after completing outpatient treatment despite all the services afforded him. The story of Alan's life is substance use and abuse punctuated by brief interludes of sobriety. What's past is prologue. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) ("When making this decision, we look to the parent's past performance because it may indicate the quality of care the parent is capable of providing in the future."); *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("When the issue is a parent's drug addiction, we must consider the treatment history of the parent to gauge the likelihood that the parent will be in a position to parent the child in the foreseeable future."); *id.* ("Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting."); *In re R.D.*, No. 14-0252, 2014 WL 1714959 (Iowa Ct. App. Apr. 30, 2014) (affirming termination of parental rights where mother sought more time pursuant to section 232.104(2)(b) but relapsed during proceedings).

Related to his substance use and abuse is a history of criminal conduct. Alan has convictions spanning two decades for license violations, making false

reports to law enforcement, forgery, operating while intoxicated, harassment, possession of a controlled substance, domestic assault, domestic assault second offense, violations of no contact orders, and criminal mischief. In particular, Alan has a history of domestic violence against Kami. In addition to the assault giving rise to the charges pending at the time of the termination hearing, Alan had been previously convicted of domestic assault where Kami was the victim. Under the facts and circumstances of this case, the fact that Kami has custody of H.L. actually supports terminating Alan's parental rights because his past conduct shows he poses a risk to the safety and health of the mother and child. *See In re C.M.M.*, 690 N.W.2d 465 (Iowa Ct. App. 2004) (concluding that history of domestic violence and alcohol abuse supported termination of father's parental rights); *In re K.G.* No. 14-0012, 2014 WL 1999179 (Iowa Ct. App. May 14, 2014) (affirming termination of father's rights where mother had custody but there was a history of domestic violence and necessity of no-contact order); *In re J.N.*, No. 13-1725, 2014 WL 72277 (Iowa Ct. App. Jan. 9, 2014) (affirming termination of mother's rights where father had custody but mother had been convicted of domestic violence against the father and violated no-contact order). There is no evidence that Alan will cease his criminal thinking and conduct if afforded an additional six months. He already has had two decades.

A final, global consideration also supports the termination of Alan's parental rights. The judge considering a six-month extension of time "should . . . constantly bear in mind that, if the plan fails, all extended time must be subtracted from an already shortened life for the children in a better home." *In re*

*A.A.G.*, 708 N.W.2d 85, 92-93 (Iowa Ct. App. 2005).  The IDHS case worker testified that Alan was in a worse position at the time of the termination hearing than he was at the beginning of this case because Alan failed to address his substance abuse and criminal behavior and now faces criminal charges that must be resolved.  The child need not wait any longer for stability in her life.  *See In re A.J.*, 553 N.W.2d 909, 915 (Iowa Ct. App. 1996) (concluding that lengthy history of repeated relapses and repeated guarded prognosis for sobriety supported termination of parental rights), *overruled on other grounds by In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010); *In re J.L.*, 669 N.W.2d 263 (Iowa Ct. App. 2003) (concluding that relapse of parent despite offer of services supported termination of parental rights).

## IV.

For the foregoing reasons, the judgment of the juvenile court is affirmed.

**AFFIRMED.**